# UNITED STATES DISTRICT COURT
for the
Southern District of West Virginia

SEALED

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>In the Matter of the Use of a Cell-Site Simulator to<br>Identify the Cellular Device Used by James Walker. | )<br>)<br>)  Case No. 1:19-mj-00026<br>)<br>)<br>) |


FILED
JUN 27 2019
RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Southern___ District of ___West Virginia___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1), 843(a), and (b). | Distribution of Schedule II, III, and IV controlled substances; obtaining Schedule II, III, and IV controlled substances by fraud; use of a communication facility to facilitate distribution of controlled substances |

The application is based on these facts:

See Affidavit in Support of an Application for a Search Warrant and "Exhibit C."

☑ Continued on the attached sheet.
☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Timothy D. Boggess, AUSA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 26, 2017

_____
*Judge's signature*

City and state: Charleston, West Virginia

Dwane L. Tinsley, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO IDENTITY THE CELLULAR DEVICE CARRIED BY JAMES WALKER | Case No. 1:19-mj-00026 <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Special Agent **Joshua T. Tripp**, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique further described in Attachment B, in order to identify the cellular device or devices carried by **James WALKER a.k.a. "X"** (the "Target Cellular Device"), described in Attachment A.

2. I am a Special Agent of the Department of Justice, Drug Enforcement Administration (DEA). As such, I am "an investigative or law enforcement officer of the United States," as defined within Section 2510(7) of Title 18, United States Code (USC), and empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21 of the United States Code. I have been employed as a Special Agent with DEA since August 2016. I am currently assigned to the Charleston District Office (CDO), Charleston, West Virginia, Tactical Diversion Squad (TDS), investigating narcotics trafficking, money laundering, and the diversion of licit pharmaceutical controlled substances and listed chemicals.

3. I received approximately twenty-four (24) weeks of specialized training in Quantico, Virginia, pertaining to narcotics trafficking, money laundering, undercover operations, and electronic and physical surveillance procedures. I also attended an additional twelve (12) weeks of specialized training as a DEA Diversion Investigator (DI), receiving instruction on investigative techniques on the diversion of pharmaceutical controlled substances and listed chemicals.

4. Prior to being a DEA Special Agent, I was a sworn law enforcement officer in the State of North Carolina since 2006. In that capacity, I investigated many violations of North Carolina State Laws, including the North Carolina Controlled Substances Act.

5. In narcotics and narcotics money laundering investigations, I have been trained in a variety of investigative techniques and resources, including physical and electronic surveillance, the analysis of telephone records, and the use of various types of informants and cooperating sources. I have assisted and conducted undercover operations and I have executed various arrest and search warrants. I have debriefed informants. Through these investigations, my training and experience, and my conversations with other law enforcement investigators, I have become familiar with the methods used by narcotics traffickers to smuggle and safeguard narcotics, to distribute narcotics, and to collect and launder proceeds related to the sales of narcotics. I am familiar with the methods employed by large-scale narcotics organizations in attempts to thwart detection by law enforcement, including, but not limited to, the use of cellular telephone technology, counter-surveillance techniques, elaborately planned smuggling schemes tied to legitimate businesses, false or fictitious identities, and coded communications and conversations

6. Through my involvement as co-case agent in a federal Title III investigation, I gained experience during the investigation involving the interception of wire communications and

drug traffickers' use of multiple cellular devices. I have been directly involved in the review and deciphering of intercepted coded conversations among narcotics traffickers that were later corroborated by surveillance. I have also received extensive instruction and practical training on intercepting communications and conducting coordinated surveillance while at the DEA Academy and by participating in active investigations.

7. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8. This Court has authority to issue the requested warrant under Federal Rule of Criminal Procedure Rule 41(b)(1) & (2) because the Target Cellular Device is currently believed to be located inside this district because James WALKER has been identified as living in Princeton, West Virginia. Recorded phone calls made to James WALKER to set up controlled buys has led to purchases in the Princeton, West Virginia area. James WALKER will stay at one location and direct customers to other locations to complete the transactions. The transactions are completed with a known associate of James WALKER. Pursuant to Rule 41(b)(2), law enforcement may use the technique described in Attachment B outside the district provided the device is within the district when the warrant is issued.

9. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of: (i) the distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code. Section 841(a)(1); (ii) conspiracy to commit and attempts to commit these offenses, in violation of Title 21, United States Code, Section 846; (iii)

use of a communications facility in facilitating the commission of the foregoing offenses in violation of Title 21, United States Code, Section 843 (b), have been committed, are being committed, and will be committed by James WALKER. There is also probable cause to believe that the identity of the Target Cellular Device(s) will constitute evidence of those criminal violations. In addition, in order to obtain additional evidence relating to the Target Cellular Device(s), its user, and the criminal violations under investigation, law enforcement must first identify the Target Cellular Device(s). There is probable cause to believe that the use of the investigative technique described by the warrant will result in officers learning that identifying information.

10. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

11. In August 2017, investigators with the Southern Regional Drug and Violent Crime Task Force (SRDVCTF) identified James WALKER as a major trafficker of controlled substances in the Princeton, Mercer County, West Virginia area, within the Southern District of West Virginia. Investigators made thirteen controlled purchases of either Oxymorphone, hydromorphone, or cocaine from James WALKER or other members of his drug trafficking organization.

12. Investigators determined that James WALKER was connected with another unknown drug trafficking organization in New York, New York and was being supplied by an unknown supplier. Investigators further determined that James WALKER would frequently travel to New York, New York from Princeton, West Virginia to obtain large quantities of prescription pills, such as Hydromorphone and Oxymorphone.

13. Throughout the investigation, investigators have identified two cellular phones that James WALKER uses to communicate with co-conspirators, such as Sezer HAMILTON, Alonzo WOODEN, and Troy JONES. However, based on investigative techniques exhausted thus far, investigators have been unable to determine a cellular phone that indicates that James WALKER communicates with a supplier in New York, New York. Investigators have been able to analyze toll records that indicate James WALKER is using the already identified cellular phones to distribute controlled substances in Princeton, West Virginia. However, these identified cellular phones do not allow investigators to determine a phone that James WALKER is using to contact a supplier out of state.

14. Investigators believe that James WALKER has additional cellular phones that are used to contact his supplier. Investigators identified other phone numbers during the infancy stages of this investigation; however, those phone numbers have not been used by James WALKER in several months. Investigators believe that James WALKER stopped using those particular numbers early in the investigation. I know that it is common for drug distributors to frequently change phone numbers to avert law enforcement investigative efforts.

15. Investigators believe that James WALKER utilizes multiple cellular phones at one time. Experienced drug traffickers, such as James WALKER, use multiple telephones to

5

communicate with various levels of their drug trafficking organization. Drug traffickers will also stop using phone numbers and cellular phones at random times in an effort to avoid detection by law enforcement.

16. Furthermore, drug traffickers will typically have a phone for various uses, for example, drug traffickers will typically have a phone used for personal matters, a phone that is used to communicate with customers, and often another phone that is used to communicate with suppliers. Oftentimes, drug traffickers will use multiple phones to segregate certain customers and suppliers as well. Using multiple phones helps the drug distributor avert law enforcement efforts to identify drug trafficking networks through telephone tolls, pen trap and trace orders, or wire and/or electronic communication interception.

17. The investigation into James WALKER's drug trafficking organization relies extensively on investigators locating James WALKER's supplier. Since investigators have not been able to obtain that information through the use of other investigative techniques and investigators believe that James WALKER will have another phone, the use of an investigative device to obtain information about other targeted cellular devices that James WALKER or his co-conspirators may possess, will allow investigators to identify other devices that James WALKER uses to communicate with suppliers.

18. Through surveillance and other investigative techniques, investigators have identified three locations in Princeton, West Virginia where James WALKER frequents. James WALKER spends several hours throughout the day at Belcher's Mobile Home Park. James WALKER owns multiple trailers throughout the mobile home park. During the day James WALKER is often seen at any of the following addresses throughout the day: 878 Hall Court, 862

6

Hall Court, and other mobile homes within the trailer park in Princeton, West Virginia. Investigators believe that it is highly likely that James WALKER will have the targeted cellular device with him while at Belcher's Mobile Home Park. Investigators also located a residence in Kensington Court Apartments, specifically, 323 Kensington Court, Princeton, West Virginia. Investigators believe that the targeted cellular device will be located with James WALKER while he is at the apartment on Kensington Court. Investigators have also observed James WALKER frequent the trailers located throughout LJ Street, Princeton, West Virginia to coordinate with known co-conspirators. Investigators have observed James WALKER go to 152 LJ Street, Princeton, West Virginia. Investigators believe that it is highly likely that James WALKER will have the targeted cellular device in his possession while at the trailers on LJ Street, Princeton, West Virginia.

## **MANNER OF EXECUTION**

19. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

20. To facilitate execution of this warrant, law enforcement may use an investigative device that sends signals to nearby cellular devices, including the Target Cellular Device, and in reply, the nearby cellular devices will broadcast signals that include their unique identifiers. The investigative device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell to communicate with others. Law

enforcement will use this investigative device when they have reason to believe that James WALKER is present. Law enforcement will collect the identifiers emitted by cellular devices in the immediate vicinity of the Target Cellular Device when the subject is in multiple locations and/or multiple times at a common location and use this information to identify the Target Cellular Device, as only the Target Cellular Device's unique identifiers will be present in all or nearly all locations. Once investigators ascertain the identity of the Target Cellular Device, they will cease using the investigative technique. Because there is probable cause to determine the identity of the Target Cellular Device, there is probable cause to use the investigative technique described by the warrant to determine the identity of the Target Cellular Device.

21. The investigative device may interrupt cellular service of cellular devices within its immediate vicinity. Any service disruption will be brief and temporary, and all operations will attempt to limit the interference of cellular devices. Once law enforcement has identified the Target Cellular Device, it will delete all information concerning non-targeted cellular devices. Absent further order of the court, law enforcement will make no investigative use of information concerning non-targeted cellular devices other than distinguishing the Target Cellular Device from all other devices.

## AUTHORIZATION REQUEST

22. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

23. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the person carrying the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

24. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to identify the Target Cellular Device outside of daytime hours.

25. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

26. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

/s/ Joshua T. Tripp
Joshua T. Tripp
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
on ___June 26, 2019___:

/s/ Dwane L. Tinsley
DWANE L. TINSLEY,
United States Magistrate Judge

10

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B when the officers to whom it is directed have reason to believe that James WALKER is present.

The locations James WALKER is known to frequent includes, but is not limited to, the following addresses located within the Southern District of West Virginia: 323 Kensington Court, Princeton, Mercer County, West Virginia; 878 Hall Court, Princeton, Mercer County; 862 Hall Court, Princeton, Mercer County, West Virginia; and 152 LJ Street, Princeton, Mercer County, West Virginia. This technique may be used at the following locations: James WALKER resides at 323 Kensington Court, Princeton, West Virginia. James WALKER commonly stays overnight at this address. 878 Hall Court, Princeton, West Virginia and 862 Hall Court, Princeton, West Virginia. James WALKER commonly spends the daytime hours at these locations to facilitate the distribution of narcotics at several other locations in Princeton, West Virginia. 152 LJ Street, Princeton, West Virginia. James WALKER will stop at this location to re-supply his runners and this is a known location to purchase narcotics from the James WALKER DTO.

11

## ATTACHMENT B

The "Target Cellular Device" is the cellular device or devices carried by James WALKER, DOB: XX-XX-1977, a black male with short black hair, brown eyes approximately 5'11" and 150 lbs. Pursuant to an investigation of James WALKER for a violation of distribution and possession with intent to distribute controlled substances, conspiracy to commit and attempt to commit these offenses, and use of a communications facility in facilitating the commission of the foregoing offenses; this warrant authorizes the officers to whom it is directed to identify the Target Cellular Device(s) by collecting radio signals, including the unique identifiers, emitted by the Target Cellular Device(s) and other cellular devices in its vicinity for a period of thirty days, during all times of day and night.

Absent further order of a court, law enforcement will make no affirmative investigative use of any identifiers collected from cellular devices other than the Target Cellular Device(s), except to identify the Target Cellular Device(s) and distinguish it from the other cellular devices. Once investigators ascertain the identity of the Target Cellular Device(s), they will end the collection, and any information collected concerning cellular devices other than the Target Cellular Device(s) will be deleted.

This warrant does not authorize the interception of any telephone calls, text messages, or other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).

## ATTACHMENT C

To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Drug Enforcement Administration. *See* 18 U.S.C. §§ 3122(b), 3123(b).